## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CUBIST PHARMACEUTICALS, INC.     )
                                      )
         Plaintiff,            )
                                      )
    v.                        )    C.A. No. 09-189-GMS
                                      )
TEVA PARENTERAL MEDICINES, INC.,  )
TEVA PHARMACEUTICALS USA, INC.,   )
And TEVA PHARMACEUTICAL        )
INDUSTRIES LTD.,                  )
                                      )
        Defendants.         )

## OPENING CLAIM CONSTRUCTION BRIEF OF THE TPM DEFENDANTS

                                 Richard L. Horwitz (#2246)
                                 David E. Moore (#3983)
                                 POTTER ANDERSON & CORROON LLP
                                 Hercules Plaza, 6th Floor

OF COUNSEL:                          1313 N. Market Street
                                 Wilmington, DE 19899
Francis C. Lynch                        Tel: (302) 984-6000
Laurie S. Gill                          rhorwitz@potteranderson.com
GOODWIN PROCTER LLP             dmoore@potteranderson.com
Exchange Place
53 State Street                         *Attorneys for Defendants*
Boston, MA 02109                 *Teva Parenteral Medicines, Inc.,*
Tel: (617) 570-1000              *Teva Pharmaceuticals USA, Inc., and Teva*
                                 *Industries Ltd.*

Dated: April 9, 2010
961221 /34185

# TABLE OF CONTENTS

**Page**

Overview................................................................................................................ 1

Background of the Alleged Inventions .............................................................. 2

The Asserted Claims and the Disputed Claim Terms....................................... 4

ARGUMENT .......................................................................................................... 6

I.      The Claim Language in the '967 and '689 Patents "Therapeutically Effective Amount" and "At a Dosage Interval That Minimizes Skeletal Muscle Toxicity" Should be Construed as Non-Limiting Because They Merely State the Intended Result of Other Express Claim Limitations. ...................................................... 6

II.     The "In Substantially Pure Form" Language of Claim 20 of the RE'071 Patent Should be Construed in Accord with the Specification and Prosecution History to Mean that the Formula 3 Compound in the Claimed Combination Contains Less Than 2.5 Percent of the Combined Total of the Two Other Identified Compounds. ....... 11

         A.      The Specification Defines "In Substantially Pure Form" to Modify Just the Formula 3 Compound, Not the Composition Containing a Combination of Three Compounds. .............................................................................. 11

         B.      The Applicants' Admission During Prosecution Supports the Conclusion that "In Substantially Pure Form" Modifies the Formula 3 Compound Only.............................................................................................................. 14

         C.      The Portions of the Specification and Prosecution History Cited by Cubist Do Not Change the Definition of "In Substantially Pure Form" in the Specification. ...................................................................................................... 15

CONCLUSION........................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.,*
    246 F.3d 1368 (Fed. Cir. 2001)................................................................................7

*Comark Communications, Inc. v. Harris Corp.,*
    156 F.3d 1182 (Fed. Cir. 1998)..............................................................................17

*Gillespie v. Dywidag Sys. Int'l,*
    501 F.3d 1285 (Fed. Cir. 2007)....................................................................... 14-15

*Mainland Lab., Ltd. v. Headwaters Res., Inc.,*
    638 F. Supp. 2d 749 (S.D. Tex. 2009) ...................................................................8

*Martek Biosciences Corp. v. Nutrinova, Inc.,*
    579 F.3d 1363 (Fed. Cir. 2009)..............................................................................13

*Minton v. National Ass'n of Sec. Dealers, Inc.,*
    336 F.3d 1373 (Fed. Cir. 2003)................................................................................7

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)........................................................................13, 14

*Roche Palo Alto LLC v. Apotex, Inc.,*
    531 F.3d 1372 (Fed. Cir. 2008)..........................................................................7, 10

*Syntex (U.S.A.) LLC v. Apotex, Inc.,*
    407 F.3d 1371 (Fed. Cir. 2005)............................................................................6, 7

*Texas Instruments Inc. v. U.S. Int'l Trade Comm'n.,*
    988 F.2d 1165 (Fed. Cir. 1993)................................................................................7

Defendants Teva Parenteral Medicines, Inc., Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd (collectively "TPM") submit this opening brief in support of their proposed construction of the three claim terms in dispute.

## Overview

The sole claim construction issue with respect to U.S. Patent Nos. 6,468,967 (the "'967 patent") and 6,852,689 (the "'689 patent"), both of which claim methods of administering daptomycin, is whether additional language in the asserted claims characterizing the result achieved with the specific dose amounts and dosing intervals claimed should be construed as limitations of the claim. This additional language of intended result--"therapeutically effective amount" and "at a dosage interval that minimizes skeletal muscle toxicity"--in the context of these claims should be construed as not being a limitation of the claims.

The only claim construction issue presented with respect to the third asserted patent, U.S. Patent No. RE39,071 (the "RE'071 patent"), which claims an antibiotic composition comprised of a combination of three compounds--formula 1 (also referred to as anhydro LY146032; formula 2 (also referred to as isomer LY146032); and formula 3 (also referred to as LY146032)--is the meaning of the phrase "in substantially pure form" at the end of claim 20, after the definition of the formula 3 compound. In particular, the parties disagree as to whether "in substantially pure form" limits only the formula 3 compound, as TPM asserts, or whether it limits the entire claimed combination of three different compounds, as Cubist asserts. Based upon the express definition by applicants of the term "in substantially pure form" in the specification, and as confirmed by the clear statement by the applicants during prosecution of the RE'071 patent characterizing claim 20, the term "in substantially pure form" in claim 20 should be held to limit only the formula 3 compound and so be construed to mean "wherein the formula

3 compound is LY146032 which contains less than 2.5 percent of a combined total of anhydro-LY 146032 and isomer-LY146032."

## Background of the Alleged Inventions

Daptomycin was first discovered by scientists at Eli Lilly & Company ("Eli Lilly") in the late 1970s and subsequently developed, but never marketed by Eli Lilly as an antibiotic for the treatment of certain infections. JA130-138, JA133-134 at ¶ 5. Beginning in 1980, Eli Lilly obtained a series of eleven patents covering daptomycin and derivatives thereof, as well as methods of producing those compounds. *Id.*, JA134-135 at ¶ 6. U.S. Patent 4,331,594, which issued in 1982 and reissued as RE32,455 (the "RE'455 patent") in 1987, claimed a group of antibiotics, and specifically claimed daptomycin in claim 1. RE'455 patent claim 1; JA399-404 at JA401. The RE'455 patent expired in May 1999. U.S. Patent No. 4,537,717 (the "'717 patent") also claimed a group of antibiotic compounds, again specifically claiming daptomycin in claim 30. '717 patent at claim 30; JA399-404 at JA401. The '717 patent issued in 1985 and expired in August 2002.

In late 1997, Eli Lilly licensed to plaintiff Cubist Pharmaceuticals, Inc. ("Cubist") the rights to daptomycin. Given the pending expiration of the '717 patent claiming daptomycin itself, Cubist faced the prospect of undertaking the significant expense of performing the clinical trials necessary to gain FDA approval, and then having no patent protection for its product.

At the time of the license to Cubist, an Eli Lilly patent application, U.S. 07/809,039 (the "'039 application"), claiming the anhydro-LY146032 and isomer-LY146032 compounds was still pending in the PTO. The predecessor application to the '039 application (the "'148 application") included a claim covering a composition having an effective amount of the drug compound LY-146032 "in substantially pure form." *See* JA317-351, JA348-349 at claim 24. Lilly attempted to overcome rejection of that claim by amending the claim to recite "LY 146032

2

in substantially pure form" and asserted that the claimed improvement (over the art) was that LY 146032 is present "in a substantially pure form." JA357-365 at JA362-363. Lilly subsequently amended that claim by substituting "daptomycin" for "LY146032." JA366-374 at JA369. Lilly, however, expressly canceled the amended claim covering daptomycin "in substantially pure form" after it was rejected on the grounds of both obviousness and obviousness-type double patenting rejections over one of Lilly's own prior patents. *See* JA375-381 at JA378-381; JA382-389 at JA385-388; JA390-398 at JA391-392. On June 15, 1999 Eli Lilly received U.S. Patent No. 5,912,226 (the "'226 patent") that issued from the '039 application with claims to the anhydro and isomer compounds. Those compounds were described in the specification as "new antibiotics." JA51-60, JA53-54 at col. 2:23; col. 2:27 - col. 3:25. The '226 patent also claimed pharmaceutical compositions containing an effective amount of the anhydro and isomer compounds, and a method of treating bacterial infections by administering these compounds. The '226 patent, however, did not have any claim covering daptomycin itself or a combination of daptomycin and the anhydro and isomer compounds. *See* JA51-50, JA59-60, claims.

In April 2000, Lilly filed an application seeking to reissue the '226 patent in which it included, for the first time, additional claims covering compositions having a *combination* of the formula 3 compound (LY146032), the anhydro compound and the isomer compound. *See* JA218-251, JA244-245 at claim 18. In addition, Lilly also included in that application a claim very similar to the previously canceled claim 24 in the '226 prosecution covering a composition having an effective amount of the formula 3 drug compound "in substantially pure form." *See id.*, JA245-246 at claim 20. Claim 24 was rejected as an improper recapture under § 251 of claimed subject matter surrendered in the application for the patent on which the reissue was based. JA252-263 at JA255. Lilly eventually overcame the improper recapture rejection by

amending claim 20 to require the anhydro and isomer compounds in addition to the formula 3 compound "in substantially pure form." JA264-289 at claim 20, JA276 & JA278. Almost twenty years after the original application was filed, the RE'071 patent issued on April 18, 2006 containing combination claims, including the amended claim 20 having a combination of the anhydro compound, the isomer compound, and the formula 3 compound "in substantially pure form." JA35-50, JA45-46 at claim 20.

The RE'071 patent was subsequently assigned by Lilly to Cubist in 2007. Cubist then listed the RE'071 patent in the FDA Orange Book. Cubist is now asserting in this case that the TPM daptomycin product infringes the combination product claims of the RE'071 patent.

Less than a year and a half after licensing the rights to develop daptomycin from Lilly, Cubist filed a provisional patent application in March 1999 from which the '967 and '689 method of administration patents issued in October 2002 and February 2005, respectively. These two patents claim methods of administering daptomycin in specified doses and at specified dosing intervals. The relevant difference is that the '689 patent is limited to dose intervals of once every 48 hours or more, while the '967 patent claims dose intervals of either once every 24 hours or once every 24 hours to once every 48 hours. Cubist is asserting that the use of the TPM daptomycin product infringes several claims in the '967 and '689 patents.

## The Asserted Claims and the Disputed Claim Terms

Asserted claims 3-5, 16, 17, 27, 28, 34, 35 and 42-45 of the '967 patent and asserted claims 48-52 of the '689 patent each claim methods of administering daptomycin. Each of the asserted claims specifies the dose amounts and dosing intervals to be administered. Asserted claim 16 of the '967 patent is representative of the asserted claims of that patent. Claim 16 depends from claim 12. Claim 12 reads as follows:

> A method for administering daptomycin, comprising the step of administering to a human patient in need thereof a therapeutically effective amount of daptomycin at a dose of 3 to 75 mg/kg at a dosage interval that minimizes skeletal muscle toxicity, wherein the daptomycin dose is repeatedly administered at a dosage interval of once every 24 hours.

Asserted claim 16 adds the limitation "wherein the dose is 4 mg/kg administered once every 24 hours." All the asserted claims of the '967 patent specify the dose amount of daptomycin to be administered and the interval at which the doses are to be given.

Asserted claim 51 of the '689 patent is representative of the asserted claims of that patent. Claim 51 depends from claim 47. Claim 47 reads as follows:

> A method for administering daptomycin, comprising the step of administering to a human patient in need thereof a therapeutically effective amount of daptomycin at a dose of at least 3 mg/kg at a dosage interval that minimizes skeletal muscle toxicity, wherein the dose is repeatedly administered at a dosage interval of once every 48 hours.

Asserted claim 51 adds the limitation "wherein the dose is 4 mg/kg." Like the '967 patent, all the asserted claims of the '689 patent specify the dose amount of daptomycin to be administered and the interval at which the doses are to be given.

The claim construction dispute involves the additional language in the claims regarding "therapeutically effective amount" and "at a dosage interval that minimizes skeletal muscle toxicity." This additional language describes the intended result of the more specific dosage amount claim limitations, but does not change the specific elements of the method of administration claimed. The parties disagree as to whether this additional language of intended result should be construed to be an express limitation of the claims.

The asserted claims of the RE'071 patent cover antibiotic compositions comprised of specified compounds. The only claim construction dispute involves claim 20, which reads as follows:

> An antibiotic composition useful for the treatment of bacterial infections comprising a combination of a compound of formula 1, a compound of formula 2 and a compound of

formula 3, wherein the formula 1 compound is [structure drawn and substituents specified]; the formula 2 compound is [structure drawn and substituents specified]; and the formula 3 compound is an effective antibacterial amount of an A21978C cyclic peptide compound of [structure drawn and substituents specified], in substantially pure form.

The claim construction dispute involves the meaning of the phrase "in substantially pure form" appearing after the definition of the formula 3 compound. The parties disagree as to whether "in substantially pure form" limits only the formula 3 compound or whether it modifies the claimed combination of formula 1, 2 and 3 compounds.

# ARGUMENT

I.     **The Claim Language in the '967 and '689 Patents "Therapeutically Effective Amount" and "At a Dosage Interval That Minimizes Skeletal Muscle Toxicity" Should be Construed as Non-Limiting Because They Merely State the Intended Result of Other Express Claim Limitations.**

| Claim Term | Cubist | TPM |
|---|---|---|
| "[A] therapeutically effective amount of daptomycin" | "An amount of daptomycin that is efficacious in reducing or eliminating the gram-positive bacterial infection" | Non-limiting as merely statement of intended result of specific dose limitation |
| "[A]t a dosage interval that minimizes skeletal muscle toxicity" | "at a dosage interval that reduces skeletal muscle toxicity in comparison to dosing more than once every 24 hours" | Non-limiting as merely statement of intended result of specific dosage interval claimed |

The Federal Circuit has recognized that claim language that simply describes the intended result of using specific functional limitations is not itself a limitation. *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1378 (Fed. Cir. 2005). There the Court held that "in a stabilizing amount" was not a limitation where the claim to a formulation recited one of the components "in a stabilizing amount between 0.0001% and 1.0% wt/vol". *Id.* The Court reasoned that the "in a stabilizing amount" language "simply describes the intended result of using the weight to volume

ratios recited in the claims." *Id.* A subsequent case involving the same patent and the same parties confirmed that the "stabilizing amount" language was merely a statement of intended result, not a claim limitation, "given that the claim expressly sets forth a concentration range for [the particular component]." *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1378 (Fed. Cir. 2008).

Similarly, the Federal Circuit had earlier decided that language reciting "an antineoplastically effective amount" was not a claim limitation where the claim recited "administering to said patient an antineoplastically effective amount of about 135-175 mg/m2 taxol over a period of about three hours." *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1375 (Fed. Cir. 2001). The Court there reasoned that "an antineoplastically effective amount" was an "expression of intended result" that "essentially duplicates the dosage amounts recited in the claims." *Id.* The Federal Circuit went on to explain that "[t]he express dosage amounts are material claim limitations; the statement of the intended result of administering those amounts does not change those amounts or otherwise limit the claim." *Id.*

Other courts have similarly found language in the body of a claim that merely stated the result of other limitations to be non-limiting. *See Texas Instruments Inc. v. U.S. Int'l Trade Comm'n.*, 988 F.2d 1165, 1171-72 (Fed Cir. 1993) (holding that language "whereby the fluid will not directly engage the device and electrical connection means at high velocity, and the conductors will be secured against appreciable displacement by the fluid" was not a limitation of a 5-step claim for a process for encapsulating a semiconductor device); *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1381 (Fed. Cir. 2003) (holding that claim language "whereby the security is traded efficiently" in a claim to a method for trading securities is not a limitation where it "does not inform the mechanics of how the trade is executed . . .[but rather]

characterize[es] the result of the executing step"); and *Mainland Lab., Ltd. v. Headwaters Resources, Inc.*, 638 F. Supp. 2d 749, 752-53 (S.D. Tex. 2009) (holding that language "to lower said adsorption potential of said cementitious composition" within the body of a claim to a method for pretreating certain products was not a limitation where the treatment agent and the amount were otherwise set forth in the body of the claim and the intended result of lowering adsorption potential did not change the amount of treatment agent added and therefore the intended result language was not a claim limitation).

All asserted claims of the '967 and '689 patents are method of administration claims. All asserted claims in the '967 and '689 patents require administration of either a specific dose or a numerically defined range of doses of daptomycin at a specified dosage interval. While the broadest asserted claims of both the '967 and '689 patents specify administering a dose from the range of 3 to 12 mg/kg, (see claims 3, 4 and 27 of the '967 patent and claim 48 of the '689 patent), most of the asserted dependent claims specify a single daptomycin dose of either 4 mg/kg or 6 mg/kg. See asserted claims 16, 17, 34, 35 and 42-45 of the '967 patent and claims 51 and 52 of the '689 patent. The additional claim language "a therapeutically effective amount of daptomycin" merely states the intended result of administering the specified dose amounts and does not change the specific dose amounts or the method of administration claimed.

Similarly, all asserted claims of both patents specify the time interval between doses. While the broadest asserted claims of the '967 patent specify that the daptomycin be administered "at a dosage interval of once every 24 hours to once every 48 hours" (see claims 3-5), all other asserted claims of the '967 patent specify that daptomycin be administered at a single dosing interval, i.e. "at a dosage interval of once every 24 hours." See claims 16, 34, 35 and 43-45. Similarly, all asserted claims of the '689 patent specify that daptomycin be

administered at a single dosing interval, i.e. "at a dosage interval of once every 48 hours." See claims 48-52. Again, the additional claim language "at a dosage interval that minimizes skeletal muscle toxicity" merely states the intended result of administering the specified daptomycin dose at the once every 24 hours or once every 48 hours dosage intervals specifically set forth in the claims, and does not change the specific dose, the specific dose intervals or the method of administration claimed.

The fact that the "dosage interval that minimizes skeletal muscle toxicity" language was added to certain non-asserted claims in the '967 patent in response to the examiner's rejection of those claims without that language on the grounds that such claims "fail[ed] to set forth the subject matter which applicant(s) regard as their invention" (*see* JA99-107 at JA102) does not change the analysis of the asserted claims. The claims which the examiner rejected on this basis were claims that either specified a range of doses without any dosing interval (*see* JA61-98, JA91 at claims 32-33; JA99-107 at JA102-103), or a claim that specified a dosing interval and a large dose range (3 mg/kg to 75 mg/kg). *See* JA61-98, JA89 at claim 16; JA108-129 at JA110; JA139-146 at JA142. The Examiner apparently recognized that claims in which no dosing interval was stated did not adequately define the claimed method of administration. With respect to claim 16 in the '568 application (issued claim 12 in the '967 patent), the Examiner was apparently concerned that the wide range of doses claimed did not adequately define the invention. In any event, none of those claims in which the Examiner made this rejection are being asserted in this case. Furthermore, the Examiner did not require the inclusion of that language in any of the asserted claims in the '689 patent. *See* JA203-214, JA211-212 at claims 71-75; JA215-217 at claims 48-52.

In the claims being asserted here, both the dose amounts and dose intervals are either specified as a narrowly defined range or expressly defined as a single numerical value. Those dose amounts and dose intervals are required steps for the claimed method of administering daptomycin from which the result (minimization of skeletal toxicity) necessarily flows. Merely reciting the result achieved by performing those required steps in the claimed method of administering daptomycin does not further limit the method of administration itself, and therefore, should not be considered a limitation.

The Federal Circuit considered, but rejected, an argument that the prosecution history required that claim language be construed as a limitation in the *Roche* case cited above. There the final claim limitation with the "stabilizing amount" language was added in response to an obviousness rejection and applicants argued that the presence of this additional component produced unexpected results over other possible surfactants by producing a clear solution. *Id.* at 1375. Despite the Court's express recognition that the stabilizing effect of producing a clear solution was an unexpected result which overcame an obviousness rejection, the Federal Circuit again confirmed that the "stabilizing amount" language was not a limitation. *Id.* at 1378. As in the *Roche* case, the fact that the result of minimizing skeletal muscle toxicity was considered by the examiner to be relevant to patentability does not mean that the result should be construed as a claim limitation, particularly where, as here, the specific limitations of dose amount and dosing interval fully define the method of administration claimed.

Similarly, Cubist's identification in the Joint Claim Chart of every place in the specification and prosecution history where the words "effective" or some variant thereof and "skeletal muscle toxicity" are recited is not a basis for construing these phrases regarding intended results as claim limitations. Discussion of the alleged problem to be solved as

maintaining therapeutic efficacy while minimizing skeletal muscle toxicity and then presenting results showing that the claimed invention minimizes that toxicity does not change the nature of the alleged invention claimed. The alleged method of administration invention is fully defined by the dose amounts and dosage intervals specified, without any need to refer to what results it achieves.

**II.     The "In Substantially Pure Form" Language of Claim 20 of the RE'071 Patent Should be Construed in Accord with the Specification and Prosecution History to Mean that the Formula 3 Compound in the Claimed Combination Contains Less Than 2.5 Percent of the Combined Total of the Two Other Identified Compounds.**

| Claim Term | Cubist | TPM |
|---|---|---|
| "[I]n substantially pure form" | "wherein the formula 3 compound is LY146032 and the combination contains less than 2.5% of a combined total of the formula 1 compound (*i.e.* anhydro-LY146032) and the formula 2 compound (*i.e.* isomer-LY146032)" | "wherein the formula 3 compound is LY146032 which contains less than 2.5 percent of a combined total of anhydro-LY146032 and isomer-LY146032" |

The claim construction dispute with respect to claim 20 of the RE'071 patent requires the Court to determine what must be "in substantially pure form". As explained below, the defined terms in the specification of the RE'071 patent explicitly provide that it is LY146032, which is the formula 3 compound, that must be in substantially pure form. Cubist improperly ignores the clearly defined terms in the specification in order to argue that it is the claimed combination composition of claim 20 as a whole that must be substantially pure in an effort to argue that TPM's daptomycin product infringes this claim of the RE'071 patent.

**A.     The Specification Defines "In Substantially Pure Form" to Modify Just the Formula 3 Compound, Not the Composition Containing a Combination of Three Compounds.**

The RE'071 patent expressly defines the term "in substantially pure form" as follows:

In another aspect, this invention provides an improved antibacterial composition comprising the new drug substance LY146032 in substantially pure form The term "new drug substance LY146032" refers to LY146032 in bulk pharmaceutical form prior to its formulation as a pharmaceutical. The term "in substantially pure form" refers to LY146032 which contains less than 2.5 percent of a combined total of anhydro-LY146032 and isomer-LY146032.

JA35-50, JA40 at col. 8:50-57. See identical definition in the '226 patent, from which the RE'071 was reissued. JA51-60, JA56 at col. 8:53-60. This definition makes clear that "in substantially pure form" refers specifically to LY146032 which contains less than 2.5 percent of the specified impurities.

The specification further defines LY146032 as the formula 3 compound shown at JA35-50, JA40 at col. 7:1-25:



"

"wherein the reacylated side chain [$R^N$] is n-decanoyl". *Id.* at col. 7:41-50 & col. 7:56-60. (*See also* JA399-404 at JA401 filed during prosecution of the '226 patent confirming that LY146032 is the formula 3 structure where $R^N$ is n-decanoyl.)

Claim 20 of the RE'071 patent specifies that:

"the formula 3 compound is an effective antibacterial amount of an A21978C cyclic peptide compound of



*FORMULA 3*

wherein $R^N$ is n-decanoyl, in substantially pure form."[1]

The formula 3 compound defined in claim 20 is identical to LY146032 as defined in the specification. Accordingly, in the context of claim 20, "the formula 3 compound" is "LY146032" as used in the definition of "in substantially pure form" at JA35-50, JA40 Col. 8:55-57.quoted above. Therefore, the definition of "in substantially pure form" should be read as "[the formula 3 compound] which contains less than 2.5 percent of a combined total of anhydro-LY146032 and isomer-LY146032."

Where inventors have defined a claim term's meaning in the specification, it is "dispositive." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (citing *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). See also *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1380 (Fed. Cir. 2009) ("When

---

[1] A certificate of correction changing the L-Asn to D-Asn in the tail of the Formula 3 structure in the specification and claim was issued on January 29, 2008. TPM is challenging the validity of that certificate of correction and nothing said by TPM in connection with construction of the "in substantially pure form" limitation in claim 20 is intended to or should be construed to waive TPM's challenge to the validity of the certificate of correction.

a patentee explicitly defines a claim term in the patent specification, the patentee's definition controls.").

Because the definitions in the specification cited above are "dispositive," they control the construction of this claim. "In substantially pure form" in claim 20 thus modifies only the formula 3 compound having an n-decanoyl reacylated side chain, not the combination of the three compounds defined by formulas 1 – 3 that comprise the antibiotic composition claimed. Accordingly, "in substantially pure form" should be construed to mean "wherein the formula 3 compound is LY146032 which contains less than 2.5 percent of a combined total of anhydro-LY146032 and isomer-LY146032,"[2] as TPM has proposed.

**B.    The Applicants' Admission During Prosecution Supports the Conclusion that "In Substantially Pure Form" Modifies the Formula 3 Compound Only.**

TPM's proposed construction is confirmed by the applicants' admission during prosecution regarding the language of claim 20 as issued. Applicants expressly stated that "Claim 20 further specifies that the formula 3 compound is in substantially pure form." JA264-289 at JA276. This is an acknowledgement that "in substantially pure form" limits the formula 3 compound, not the combination of the three different compounds claimed.[3]

As the Federal Circuit has recognized, "the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317; *see also Gillespie*

---

[2] The specification further defines anhydro-LY146032 as the compound shown in formula 1 at columns 1 and 2 of the patent, with specified substituents (JA35-50, JA40 at col. 8:7-10), and isomer LY146032 is defined as the compound shown in formula 2 at columns 3-4, with specified substituents (*Id.* at col. 8:11-15).

[3] The structure of the claim language itself also supports TPM's construction of "in substantially pure form" as modifying the formula 3 compound. The claim uses semi colons to separate the descriptions of the formula 1, 2 and 3 compounds in the claimed combination. The "in substantially pure form" language appears at the end of the description of the formula 3 compound and thus logically modifies the immediately preceding language identifying the formula 3 compound. Here the use of semicolons to separate the descriptions of the three

*v. Dywidag Sys. Int'l*, 501 F.3d 1285, 1291 (Fed. Cir. 2007) (holding claim term limited to meaning argued by patentee during prosecution because "the patentee is held to what he declares during the prosecution of his patent.") Here, Cubist's proposed construction of "in substantially pure form" as modifying the combination of the formula 1, formula 2 and formula 3 compounds is directly contrary to this clear admission during prosecution.

Moreover, if the applicants had intended to claim that the combination itself was in substantially pure form, they would have been expected to use language expressly referring to the combination such as "wherein the combination of formulas 1, 2 and 3 is in substantially pure form." Indeed, the language of claim 18 confirms that applicants knew how to specifically refer to the combination when they intended to refer to the relative composition of the combination. Claim 18 ends with the following language after the identification of the formula 1, 2 and 3 compounds--"; and wherein the total amount of the compound of formula 1 and the compound of formula 2, or salts thereof, in the combination is less than 6 weight percent." If applicants had intended that claim 20 would similarly provide that the purity limitation referred to the combination of the three compounds, it would have been expected that they would have used similar language.

### C. The Portions of the Specification and Prosecution History Cited by Cubist Do Not Change the Definition of "In Substantially Pure Form" in the Specification.

The portions of the specification and the prosecution history on which Cubist relies do not support its proposed construction of "in substantially pure form" in claim 20 as modifying the combination of the 3 compounds. Pages 17-18 and footnotes 4 and 5 of the December 21, 2000 Amendment and Response to Office Action (JA264-289 at JA281-282) identified by Cubist

formulas confirms that the "in substantially pure form" modifies the formula 3 compound only, not the combination of all three compounds.

in the Joint Claim Chart submitted on March 19, 2010 do not even address claim 20. Instead, they address separate claims 18 and 19 that are unrelated to claim 20. The parties have not identified any claim construction disputes with respect to claims 18 and 19. While page 21 of the December 21, 2000 Response (*id.* at JA285) does address the "in substantially pure form" limitation, it merely provides a truncated version of the identical definition of "in substantially pure form" included in both the original '226 and the RE'071 patents quoted above. Recitation by the applicant during prosecution of a truncated version of the express definition set forth in the specification cannot change the dispositive effect of the definition set forth in the specification. Nothing cited by Cubist provides any basis for ignoring the clear definitions set forth in the specification and applicant's admission during prosecution of the scope of the "in substantially pure form" limitation of claim 20.

Moreover, Cubist's proposed construction of claim 20 seeks to improperly recapture a claim that applicants tried, but failed, to obtain from the PTO. Cubist's proposed construction of claim 20 describes a composition that contains 97.5 percent of the formula 3 compound (LY 146032) with less than 2.5 percent of the combined formula 1 and 2 compounds. In essence, Cubist seeks to construe claim 20 as if it claims "LY146032 in substantially pure form." As explained in the Background section at pages 2 – 4 above, the applicants cancelled a claim to LY146032 (i.e. the formula 3 compound) "in substantially pure form" during prosecution of the '226 patent from which the RE'071 patent was reissued after it was rejected by the Examiner on the grounds of obviousness-type double patenting. Applicants again tried to obtain a claim covering the formula 3 compound "in substantially pure form" (claim 20) when they submitted the reissue application, but that claim was rejected as improper recapture of what had been cancelled during the '226 prosecution. To overcome that rejection, applicants added to claim 20

language requiring a combination of the formula 1 and formula 2 compounds, in addition to the formula 3 compound "in substantially pure form." Cubist's proposed construction ignores the added language that the composition contain the formula 1 and 2 compounds in additional to the formula 3 compound in substantially pure form. Cubist is now trying to improperly construe claim 20 so that it achieves the improper recapture that the Examiner rejected.

Cubist's proposed construction is also improper because it would render claim 20, which is an independent claim, effectively the same as claim 19. Claim 19, which depends from claim 18, claims an antibiotic composition with the same combination of formula 1, formula 2 and formula 3 compounds as claimed in claim 20 "wherein the combined total amount of the compound or salt of formulas 1 and 2 is less than or equal to 2.5 weight percent." Cubist's proposed construction of "in substantially pure form" in claim 20 would mean that all combinations of the three compounds in which the formula 1 and 2 compounds are less than 2.5 percent of the total are covered by both claims 19 and 20. The only difference between the two claims is that a composition that had exactly 2.5% weight percent of the formula 1 and 2 compounds would be covered by claim 19, but not by claim 20. Accordingly, claim 20, as Cubist asserts it should be construed, is pure surplusage, because all formulations falling within claim 20 would also be covered by claim 19.

The Federal Circuit has long recognized a presumption that each claim in a patent has a different scope. *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998). Here Cubist will not be able to rebut that presumption, because the applicant's admission during prosecution that the "in substantially pure form" limitation applies to the formula 3 compound confirms that claim 20 was meant to have a different scope than claim 19.

## CONCLUSION

For the reasons set forth above, the Court should construe the claim language "a therapeutically effective amount of daptomycin" and "at a dosage interval that minimizes skeletal muscle toxicity" in the asserted claims of the '967 and '689 patents as non-limiting because they merely state the intended result of the specific dose amount and dosage intervals claimed in the asserted claims. The "in substantially pure form" limitation of claim 20 of the RE'071 patent should be construed to mean "wherein the formula 3 compound is LY146032 which contains less than 2.5 percent of a combined total of anhydro-LY146032 and isomer-LY146032."

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Francis C. Lynch
Laurie S. Gill
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Tel: (617) 570-1000

Dated: April 9, 2010
961221 /34185

By: */s/ Richard L. Horwitz*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants*
*Teva Parenteral Medicines, Inc.,*
*Teva Pharmaceuticals USA, Inc., and Teva*
*Industries Ltd.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on April 9, 2010, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on April 9, 2010, the attached document was Electronically Mailed

to the following person(s):

Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19899
jblumenfeld@mnat.com
mnoreika@mnat.com

Kate Hutchins
Wilmer Cutler Pickering Hale
    and Dorr LLP
399 Park Avenue
New York, NY  10022
kate.hutchins@wilmerhale.com

William F. Lee
Lisa J. Pirozzolo
Wilmer Cutler Pickering Hale
    and Dorr LLP
60 State Street
Boston, MA  02109
william.lee@wilmerhale.com
lisa.pirozzolo@wilmerhale.com

/s/ Richard L. Horwitz
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

911693 / 34185