IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CUBIST PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-189 (GMS) |
| | ) | |
| TEVA PARENTERAL MEDICINES, INC., | ) | |
| TEVA PHARMACEUTICALS USA, INC., | ) | |
| and TEVA PHARMACEUTICAL | ) | |
| INDUSTRIES LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## CUBIST PHARMACEUTICALS, INC.'S
## RESPONSIVE CLAIM CONSTRUCTION BRIEF

<table>
<tr><td>

OF COUNSEL:

William F. Lee
Lisa J. Pirozzolo
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Kate Hutchins
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

April 30, 2010

</td><td>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*
  *Cubist Pharmaceuticals, Inc.*

</td></tr>
</table>

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT........................................................................................................................2

    A.    Teva's Proposed Construction Gives No Independent Meaning to Limitations Important to the Effective and Safe Administration of Daptomycin......................2

        1.    "A Therapeutically Effective Amount of Daptomycin" Differs from the Dose and Dose Interval Limitations in the Claims ......................................2

        2.    "At a Dosage Interval That Minimizes Skeletal Muscle Toxicity" Is An "Essential Element" of the Claimed Invention .........................................4

    B.    Teva's Proposal For "In Substantially Pure Form" Is Inconsistent With the Description of the Invention in the Claim and the Specification............................7

        1.    Teva's Proposed Construction is Inconsistent with the Intrinsic Evidence.7

        2.    Teva Mischaracterizes the File History .......................................................9

        3.    Teva's Recapture Arguments Are Improper and Lack Merit ...................11

        4.    Claim 20 Differs From Claim 19 ..............................................................12

III. CONCLUSION...................................................................................................................13

# TABLE OF AUTHORITIES

Federal Cases

*Autogiro Co. of Am. v. United States*,
   384 F.2d 391 (Ct. Cl. 1967) ................................................................................. 13

*Bicon, Inc. v. Straumann Co.*,
   441 F.3d 945 (Fed. Cir. 2006) ................................................................................ 6

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
   246 F.3d 1368 (Fed. Cir. 2001) ........................................................................ 4, 6

*Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*,
   214 F.3d 1302 (Fed. Cir. 2000) ............................................................................ 8

*Hearing Components, Inc. v. Shure Inc.*,
   No. 09-1364, 2010 U.S. App. LEXIS 6726 (Fed. Cir. Apr. 1, 2010) .................... 7

*Hester Indus., Inc. v. Stein, Inc.*,
   142 F.3d 1472 (Fed. Cir. 1998) .......................................................................... 12

*Invitrogen Corp. v. Biocrest Mfg. L.P.*,
   327 F.3d 1364 (Fed. Cir. 2003) ............................................................................ 7

*Mainland Lab., Ltd. v. Headwaters Resources, Inc.*,
   638 F. Supp. 2d 749 (S.D. Tex. 2009) ................................................................. 7

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
   No. 2008-1288, 2010 WL 1427547 (Fed. Cir. Apr. 12, 2010) ........................... 11

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005) ........................................................................ 1, 8

*Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*,
   336 F.3d 1373 (Fed. Cir. 2003) ............................................................................ 7

*Novartis Pharms. Corp. v. Apotex Corp.*,
   No. 02-8917, 2006 U.S. Dist. LEXIS 10130 (S.D.N.Y. Mar. 13, 2006) .............. 3

*Pause Tech. LLC v. TiVo Inc.*,
   419 F.3d 1326 (Fed. Cir. 2005) ............................................................................ 8

*Roche Palo Alto LLC v. Apotex Inc.*,
   531 F.3d 1372 (Fed. Cir. 2008) ........................................................................ 3, 7

*Schoenhaus v. Genesco, Inc.*,
   440 F.3d 1354 (Fed. Cir. 2006) ............................................................................ 9

*Seroctin Research & Techs. v. Unigen Pharms.*,
    No. 07-00582, 2008 U.S. Dist. LEXIS 91236 (D. Utah Nov. 10, 2008) ................................... 3

*Syntex (U.S.A.) LLC v. Apotex, Inc.*,
    407 F.3d 1371 (Fed. Cir. 2005) ......................................................................................... 3, 6, 7

*Tandon Corp. v. U.S. Int'l Trade Comm'n*,
    831 F.2d 1017 (Fed. Cir. 1987) ................................................................................................ 12

*Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*,
    988 F.2d 1165 (Fed. Cir. 1993) .................................................................................................. 7

Federal Statutes

35 U.S.C. § 112 .................................................................................................................................. 12

## I. INTRODUCTION

Teva's proposed claim constructions violate the fundamental rule that "a claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005). For the '967 and '689 patents, Teva advocates constructions that would give no independent meaning to two important elements of Cubist's claimed method of administering daptomycin: a "therapeutically effective amount of daptomycin" and "at a dose interval that minimizes skeletal muscle toxicity." For the RE'071 patent, which is directed to a more pure form of daptomycin, Teva proposes a construction that would allow *unlimited* amounts of impurities, effectively reading "in substantially pure form" out of the claim. These constructions are contrary to the intrinsic evidence as well as settled claim construction principles.

Notwithstanding Teva's attempts to diminish the significance of the inventions disclosed in Cubist's patents (Teva Br. 2-4), two Cubist scientists first discovered a method of administering daptomycin in sufficient amounts to treat Gram-positive bacterial infections while minimizing skeletal muscle toxicity, an adverse effect that caused Eli Lilly to terminate its clinical studies of what had been a promising new antibiotic. '967 Patent, col. 1, l. 63 – col. 2, l. 20 (J.A. at A8). The '967 and '689 patents thus claim administration not of a single dose of daptomycin, but a "therapeutically effective amount" sufficient to treat a Gram-positive bacterial infection. The claims also require administration of daptomycin in a manner that "minimizes skeletal muscle toxicity," an element that the Examiner repeatedly characterized as an "essential" aspect of the invention that must be included in the body of the claims. Teva's proposal would give no meaning to these important limitations, contrary to the intrinsic evidence and established claim construction principles.

The RE'071 patent discloses another important discovery: it identifies two impurities of daptomycin and claims an "improved" form of the antibiotic containing *limited* amounts of those impurities. Teva, however, proposes a claim construction that would include compositions with *unlimited* amounts of the two impurities. Teva's proposed construction would thus render the term "in substantially pure form" meaningless. Teva's proposed construction is also at odds with the intrinsic evidence including the patent specification, which characterizes the invention as an improved, more pure antibacterial composition, not one in which the identified impurities can exist in limitless quantities.

## II. ARGUMENT

### A. Teva's Proposed Construction Gives No Independent Meaning to Limitations Important to the Effective and Safe Administration of Daptomycin

#### 1. "A Therapeutically Effective Amount of Daptomycin" Differs from the Dose and Dose Interval Limitations in the Claims

As Cubist explained (Cubist Opening Br. 6-7), "a therapeutically effective amount" encompasses the *total amount* of daptomycin administered over a course of treatment, *i.e.* multiple doses administered at the claimed dose interval to obtain the requisite therapeutic effect. Indeed, "a therapeutically effective amount" is the *only* claim term referencing the concept of the total amount of daptomycin administered to treat the patient's infection.

Teva confusingly combines its claim construction arguments for "a therapeutically effective amount of daptomycin" and "at a dosage interval that minimizes skeletal muscle toxicity," such that it is difficult to determine which arguments apply to which limitation. Teva Br. 6-11. Teva appears to argue, however, that "a therapeutically effective amount of daptomycin" does not limit the claimed method beyond the specific dose and dose interval limitations. That argument is incorrect. Neither the dose nor dose interval limitations refers to

the full course of treatment, *i.e.* administration of a sufficient *total* amount of daptomycin necessary to reduce or eliminate a Gram-positive bacterial infection.

For example, asserted claim 16 of the '967 patent (J.A. at A15)—which depends from claim 12 and therefore requires a "therapeutically effective amount"—specifies a dose of 4 milligrams per kilogram of patient's body weight at a dose interval of once every 24 hours. Claim 16 does not, however, specify the number of doses to be administered. "[T]herapeutically effective amount" is the only term supplying that limitation: it means that the total amount of daptomycin to be administered is the amount needed to reduce or eliminate the bacterial infection for which the patient is being treated.

Cubist's construction is consistent with the customary meaning of "therapeutically effective amount," namely a quantity sufficient to treat a patient's condition. *See, e.g., Seroctin Research & Techs. v. Unigen Pharms.*, No. 07-00582, 2008 U.S. Dist. LEXIS 91236, at *9 (D. Utah Nov. 10, 2008) (construing "'[t]herapeutically effective amount" as "a quantity that produces a positive result in the treatment of depression" and "a quantity that produces a positive result in the treatment of mood disorders"); *Novartis Pharms. Corp. v. Apotex Corp.*, No. 02-8917, 2006 U.S. Dist. LEXIS 10130, at *12-13 (S.D.N.Y. Mar. 13, 2006) (construing "a therapeutically effective amount" to mean "an amount sufficient to produce a desired therapeutic effect.").

The cases Teva cites are inapposite. In *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371 (Fed. Cir. 2005) and *Roche Palo Alto LLC v. Apotex Inc.*, 531 F.3d 1372 (Fed. Cir. 2008), the relevant claim specified that a preservative should be added "in a stabilizing amount," and further specified the precise amount at "between .001% and 1.0% wt/vol." *Roche*, 531 F.3d at 1375. Thus, the claim explicitly defined the total amount of preservative to be used, rendering

the "stabilizing amount" language unnecessary. Similarly, in *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368 (Fed. Cir. 2001), the court found that "antineoplastically effective amount" "essentially duplicate[d]" the "express dosage amounts" specified in the claim. *Id.* at 1375. By contrast, in the '967 and '689 patents, only the term "therapeutically effective amount" defines the total amount of daptomycin to be administered.[1] None of the remaining cases cited by Teva involves claims directed to administration of therapeutic compounds, and none involves a claim term that has independent meaning from other terms, as is the case with "a therapeutically effective amount of daptomycin."

Accordingly, "a therapeutically effective amount of daptomycin" is not redundant of the dose and dose interval limitations; it adds an important limitation and should be given its independent meaning. That meaning is "an amount of daptomycin that is efficacious in reducing or eliminating the Gram-positive bacterial infection"—a construction that Teva has not countered, assuming the term is found to be limiting.

### 2. "At a Dosage Interval That Minimizes Skeletal Muscle Toxicity" Is An "Essential Element" of the Claimed Invention

Cubist proposed construing the term "at a dosage interval that minimizes skeletal muscle toxicity" as "at a dosage interval that reduces skeletal muscle toxicity in comparison to dosing more than once every 24 hours." That construction is consistent with the claims and specification of the '967 and '689 patents, as well as the Examiner's insistence during prosecution that minimizing skeletal muscle toxicity is an essential element of the claimed invention that must be included in the body of the claims. Teva's contrary argument depends on mischaracterizing the prosecution history of both patents.

---

[1] *Bristol-Myers Squibb* is additionally distinguishable because the claims at issue in that case involved administration of a single dose, not "repeated" administration of the claimed dose, as is the case here.

-4-

During the '967 patent prosecution, the Examiner rejected then-pending claim 16 because it omitted an essential element of the invention ('967 File History, December 4, 2000 Second Office Action, at 2 (J.A. at A142))—even though the claim recited both a dose range and the specific dosing interval of "once every 24 hours." '967 File History, U.S. Patent Application No. 09/406,568, at 28 (J.A. at A89). Contrary to Teva's assertion (Teva Br. 9), the Examiner did not reject claim 16 because he was "concerned that the wide range of doses claimed did not adequately define the invention." He did not even reference the dosing range in his rejection. Rather, the Examiner rejected the claim for omitting an "essential element of the invention ... [namely] that it does not cause muscle toxicity." '967 File History, December 4, 2000 Second Office Action, at 2 (J.A. at A142). Consistent with this rejection, the Examiner later suggested that the applicants amend all the claims to include the limitation regarding minimization of skeletal muscle toxicity in the body of the claim. '967 File History, Interview Summary, at 1 (J.A. at A148) ("Examiner suggested amending claims to state minimization of toxicity *in body of claim* and to clarify that more than a single dose, *i.e.*, over a period of days.") (Emphasis added). The applicants added the language to the claim and relied on it to distinguish prior art. '967 File History, September 11, 2000 Response, at 6 – 14, 16 – 21 (J.A. at A114 – 122, A124 – 129). Ultimately, in the Notice of Allowance, the Examiner defined the patentable invention as including the limitation "that minimizes skeletal muscle toxicity." '967 File History, August 13, 2001 Notice of Allowance, at 2 (J.A. at A167).[2]

---

[2]   The Examiner's insistence that the skeletal muscle toxicity limitation be added to the *body* of the claim distinguishes cases recognizing that language in the *preamble* typically is non-limiting. *E.g.*, *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) ("If the body of the claim sets out the complete invention, the preamble is not ordinarily treated as limiting the scope of the claim." (internal quotation marks omitted)); *Bristol-Myers Squibb*, 246 F.3d at 1375 (construing "preamble language" as non-limiting). Of
-5-

The '689 patent prosecution does not help Teva either. The Examiner did not "require" inclusion of the skeletal muscle toxicity limitation in the '689 patent (Teva Br. 9) because he did not need to: it was already there. The application for the '689 patent was filed on February 20, 2002, almost two years after the Examiner first stated (during the '967 patent prosecution) that minimizing skeletal muscle toxicity was an essential element of the invention and months after the Examiner required the inclusion of that limitation in the body of the '967 claims. As a consequence, the applicants included "minimizes skeletal muscle toxicity" in some of the '689 claims as originally filed and in later-added claims, including asserted claims 48-52. Moreover, the Examiner *did* require addition of the "minimizes skeletal muscle toxicity" limitation to '689 claims that did not contain that language, as Cubist explained (Cubist Opening Br. 12). *See also* '689 File History, May 21, 2002 Office Action, at 4 (J.A. at A174).

The Examiner's emphasis of the importance of minimizing skeletal muscle toxicity distinguishes this case from those Teva cites, none of which suggests that an examiner viewed the limitation at issue as an "essential" aspect of the invention or required its inclusion in the claim. *See, e.g., Syntex*, 407 F.3d at 1378 (no discussion of prosecution history in construing "in a stabilizing amount"); *Bristol-Myers Squibb*, 246 F.3d at 1375 (one term was added "voluntarily . . . after the examiner had already indicated to Bristol that the claims were allowable"; history of other terms not discussed); *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165 (Fed. Cir. 1993) (no discussion of prosecution history); *Minton v. Nat'l Ass'n of Sec. Dealers*,

---

course, even preamble language is limiting if it is essential to the invention. *See* Cubist Opening Br. 13 (citing cases).

*Inc.*, 336 F.3d 1373 (Fed. Cir. 2003) (same); *Mainland Lab., Ltd. v. Headwaters Resources, Inc.*, 638 F. Supp. 2d 749 (S.D. Tex. 2009) (same).[3]

Here, by contrast, the Examiner consistently characterized minimizing skeletal muscle toxicity as an essential aspect of the invention and required its insertion in the body of the claims. '967 File History, Interview Summary, at 1 (J.A. at A148). The minimization of skeletal muscle toxicity also served to distinguish the claimed invention from prior art, which reinforces that it is a claim limitation. *See, e.g., Hearing Components, Inc. v. Shure Inc.*, No. 09-1364, 2010 U.S. App. LEXIS 6726, at *16 (Fed. Cir. Apr. 1, 2010); *cf. Invitrogen Corp. v. Biocrest Mfg. L.P.*, 327 F.3d 1364, 1370 (Fed. Cir. 2003).

### B. Teva's Proposal For "In Substantially Pure Form" Is Inconsistent With the Description of the Invention in the Claim and the Specification

#### 1. Teva's Proposed Construction is Inconsistent with the Intrinsic Evidence

Cubist's proposed construction of "in substantially pure form" in claim 20 of the RE'071 patent is that the two "impurities" disclosed in the patent—formula 1 (anhydro-LY146032) and formula 2 (isomer-LY146032)—account for less than 2.5% of the *combination* of those two impurities with formula 3 (LY146032, *i.e.* daptomycin itself). The claim language, the

---

[3] Teva's assertion that *Roche* rejected "an argument that the prosecution history required that claim language be construed as a limitation" (Teva Br. 10) is simply incorrect. The patent was construed in the prior *Syntex* opinion, which did not discuss prosecution history in the context of claim construction at all. *See Syntex*, 407 F.3d at 1378. The later opinion in *Roche* did not address claim construction except to refer back to the earlier holding in *Syntex*; the discussion Teva cites involved a non-infringement defense "under the reverse doctrine of equivalents." *Roche*, 531 F.3d at 1377. The defendant, Apotex, accepted the district court's construction (affirmed by the Federal Circuit in *Syntex*) that "'stabilizing amount' [was] an intended result, not a claim limitation" and argued only that, under the reverse doctrine of equivalents, that construction was "of no consequence." *Id.* at 1378. Nothing in the Federal Circuit's reverse-doctrine-of-equivalents analysis in *Roche* bears on the claim construction that was settled over three years earlier in *Syntex*.

specification, and the nature of the invention itself, namely an "improved" form of the antibiotic, support Cubist's construction. RE'071 patent, col. 2, ll. 29 – 30 (J.A. at A37). Teva, by contrast, argues that the limitation of 2.5% of formulas 1 and 2 applies not to the claimed *combination* of formulas 1, 2, and 3, but to formula 3 *alone*. Teva's proposed construction is nonsensical. The few statements that Teva plucks out of context from the file history do not justify a construction contrary to the claim language, the specification, and the file history considered as a whole.

Claim 20, like the specification, defines formulas 1, 2, and 3 using specific chemical formulas. RE'071 patent, col. 2, l. 33 – col. 3, l. 33 (J.A. at A37 – A38); col. 7, ll. 1-27, 56-60 (J.A. at A40); *id.* cls. 1, 2, 18, 20, 26, 30 (J.A. at A43 – A46, A48 – A49). As a matter of basic chemistry, formula 3 simply *cannot* contain formula 1 or formula 2; they are necessarily different compounds. *See* RE'071 patent, col. 7, l. 61 – col. 8, l. 44 (J.A. at A40). Consequently, construing "in substantially pure form" to mean that formula 3 contained less than 2.5% of formulas 1 and 2 would *always* be satisfied by *any* combination of those three compounds, because formula 3 by definition contains 0% of the two impurities. Teva's construction thus renders the 2.5% limit—and the "in substantially pure form" limitation—utterly meaningless, as it will always be met by any composition that is a "combination" of formulas 1, 2, and 3, no matter how much of formulas 1 and 2 is present. Such a construction is disfavored. *Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1334 (Fed. Cir. 2005) ("In construing claims, however, we must give each claim term the respect that it is due."); *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."); *Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) (rejecting construction that would render a claim term "superfluous").

Consider, as an analogy to the combination of formulas 1, 2, and 3 in claim 20, a fruit bowl containing a "combination" of raspberries, blueberries, and strawberries. Under Cubist's proposed construction, claim 20 is directed to a combination of the three that contains less than 2.5% raspberries and blueberries, a logical construction that encompasses certain combinations and not others. Under Teva's proposed construction, however, claim 20 claims a combination in which the strawberries *themselves* contain less than 2.5% raspberry and blueberry. Because a strawberry cannot contain a blueberry or raspberry, Teva's construction is nonsensical. *See Schoenhaus v. Genesco, Inc.*, 440 F.3d 1354, 1357 (Fed. Cir. 2006) (concluding that a proposed construction that would render a claim "nonsensical" could not be correct).

Moreover, Teva's proposed construction cannot be reconciled with the patent's description of the claimed invention. The specification explains that the inventors discovered "two impurities," RE'071 patent col. 7, ll. 62 – 63 (J.A. at A40), and were able to make an *improved* antibacterial composition that contained a combined total of 6% or less of these two impurities, *id.* col. 8, ll. 50 – 60 & cl. 18 (J.A. at A40, A44 – A45); *see also id.* col. 2, ll. 29 – 30 (J.A. at A37) (invention is "an improved form" of daptomycin). Yet under Teva's proposed construction, claim 20 encompasses a composition with *unlimited* amounts of the impurities represented by formulas 1 and 2, in combination with a "substantially pure" formula 3. Such a construction is contrary to the patent's description of the invention, which is directed to improving the antibacterial composition by *limiting* the amount of the two impurities.

### 2. Teva Mischaracterizes the File History

Teva cites a truncated portion of the file history stating that "Claim 20 further specifies that the formula 3 compound is in substantially pure form." Teva Br. 14. When viewed in its entirety, however, the prosecution history supports Cubist's claim construction, not Teva's. The relevant passage reads:

> Amended independent Claim 18 is directed to an antibiotic composition comprised of a combination of a compound of formula 1, a compound of formula 2, and a compound of formula 3, or a pharmaceutically acceptable salt thereof, wherein the amount of the compounds of formula 1 and 2, or salts thereof, in the combination is less than 6 weight percent.
>
> *Amended Claim 20 is similar to amended Claim 18 except that* Claim 20 further specifies that the formula 3 compound is in substantially pure form.

JA276 (emphasis added). The applicants thus argued that claim 20 is similar to claim 18 because it contains a "combination" of compounds of formulas 1, 2, and 3. The difference between the two claims is that, while claim 18 permitted a combination with up to 6% impurities, claim 20 requires "substantially pure form," *i.e.*, no more than 2.5% impurities. Because the "combination" in claim 20 consisted of less than 2.5% impurities—and therefore was over 97.5% formula 3—the applicants stated that the formula 3 compound was "in substantially pure form," *i.e.*, was combined with very low amounts of impurities. (By analogy, a combination of raspberries, blueberries, and strawberries that contained over 97.5% strawberries would contain strawberries in "substantially pure form.") Similarly, the applicants stated that they "developed improved compositions and formulations comprising a combination of formula 1, formula 2 and formula 3 compounds (or salts thereof), wherein the total amount of the formula 1 and formula 2 compounds (or salts thereof) *in the combination* is reduced to less than 6 weight percent." RE'071 File History, December 21, 2000 Response to Office Action, at 11 (J.A. at A275) (emphasis added).

Nowhere does the file history suggest that the applicants represented that formula 3 *itself* could contain formula 1 or 2 in any amount, or that the applicants' invention consisted of a combination in which formula 3 contained less than 2.5% of those compounds. The specification states that "we found that *the LY146032 material* contained two impurities." RE'071 at col. 7, ll. 61 – 64 (J.A. at A40) (emphasis added). As the specification explains, the

phrase "LY146032 *material*" refers to a combination of LY146032 (formula 3) and the two discovered impurities, not LY146032 (formula 3) alone. *See generally id.* at col. 7, ll. 61-66 (J.A. at A40) (distinguishing "these materials," *i.e.* the two impurities, from "LY146032," *i.e.* formula 3); col. 7, l. 66 – col. 8, l. 2 (J.A. at A40) (distinguishing "LY146032," *i.e.* formula 3, from "the new compounds," *i.e.* the formula 1 and 2 impurities). The specification then explains that, to obtain formula 3 in substantially pure form, one would obtain a *combination* of compounds of formulas 1, 2, and 3 that contains less than 2.5% of formula 1 and formula 2 compounds. *See* RE'071 at col. 8, ll. 55-57 (J.A. at A40).

Accordingly, the file history—like the claim language and the specification—supports Cubist's proposed construction. Nothing in the intrinsic evidence suggests that the applicants believed (as Teva apparently does) that formula 3 could itself contain any amount of formula 1 or 2.

### 3. Teva's Recapture Arguments Are Improper and Lack Merit

Teva argues that Cubist seeks to "recapture a claim that applicants tried, but failed, to obtain from the PTO." Teva Br. 16. Teva's recapture arguments fail for at least two reasons.

First, claim terms cannot be construed "in light of the rule against recapture instead of relying on the terms' ordinary meanings." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, No. 2008-1288, 2010 WL 1427547, at *4 (Fed. Cir. Apr. 12, 2010) (citation omitted). Accordingly, Teva's argument is not properly before the Court.

Second, even if the Court chose to entertain a "recapture" argument during claim construction, recapture did not occur here. The rule against recapture applies "when the patentee *broadens* the scope of a claim in reissue to cover subject matter that he surrendered during prosecution of the original claims." *Id.* at *5 (citing *Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1480 (Fed. Cir. 1998) (emphasis added)). But claim 20 in the RE'071 patent is *narrower*

than the claim cancelled during prosecution. Cancelled claim 24 did not require *any* amount of the compounds of formula 1 and formula 2, whereas claim 20 of the reissue patent requires the presence of *both* formula 1 and formula 2 in a "combination" with formula 3. Moreover, although the Patent and Trademark Office initially rejected claims 20, 21, and 23 on grounds of recapture (RE'071 File History, August 22, 2000 Office Action, at 2 (J.A. at A255); RE'071 File History, April 9, 2001 Office Action, at 2 (J.A. at A293)), the applicants successfully rebutted those rejections (*see* RE'071 File History, December 21, 2000 Response to Office Action, at 14 (J.A. at A278); RE'071 File History, July 3, 2002 Response to Office Action, at 11 (J.A. at A312) (noting that the pending reissue claims were not broader than the issued claims because "applicants have added limitations, that is the requirement for the presence of two additional compounds, than required by the original claims")). Allowance of the claims reflects the PTO's determination that recapture did not occur.[4]

### 4. Claim 20 Differs From Claim 19

Teva mistakenly argues that Cubist's proposed construction "would render claim 20, which is an independent claim, effectively the same as claim 19." Teva Br. 17. Yet Teva itself identifies the difference between the two claims: "a composition that had exactly 2.5% weight percent of the formula 1 and 2 compounds would be covered by claim 19, but not by claim 20." *Id.* That difference distinguishes the two claims. *See Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987) ("[P]ractice has long recognized that claims may be multiplied . . . to define the metes and bounds of the invention in a variety of different ways.

---

[4] Teva's "recapture" argument fails for additional reasons, including that the original claim was canceled to obviate a Section 112 rejection and did not surrender any matter. *See* RE'071 File History, July 3, 2002 Response to Office Action, at 12 – 13 (J.A. at A313 – 314). Moreover, even if recapture were relevant to claim construction and Teva's recapture argument made sense, Teva does not explain how its construction would avoid any supposed recapture issue.

Thus two claims which read differently can cover the same subject matter." (internal quotations and citations omitted)); *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 405 (Ct. Cl. 1967) (noting that differences between claims are "not to be undervalued because of their slightness since claims covering the same invention in varying degrees of breadth or scope usually have only slight differences"). Under Cubist's proposed construction, claims 19 and 20 do overlap, but—as Teva concedes—they also differ. Contrary to Teva's assertions, the difference is sufficient.

## III. CONCLUSION

For the foregoing reasons, Cubist respectfully requests that the Court construe the claims as proposed in Cubist's Opening Brief.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Maryellen Noreika

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Plaintiff
  Cubist Pharmaceuticals, Inc.*

OF COUNSEL:

William F. Lee
Lisa J. Pirozzolo
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Kate Hutchins
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

April 30, 2010

# CERTIFICATE OF SERVICE

I hereby certify that April 30, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

>   Richard L. Horwitz, Esquire
>   David E. Moore, Esquire
>   POTTER ANDERSON & CORROON LLP

I further certify that I caused copies of the foregoing document to be served on April 30, 2010, upon the following in the manner indicated:

Richard L. Horwitz, Esquire                                 *VIA ELECTRONIC MAIL*
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Hercules Plaza – 6th Floor
Wilmington, DE 19801

Francis L. Lynch, Esquire                                   *VIA ELECTRONIC MAIL*
Laurie S. Gill, Esquire
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109

Maryellen Noreika (#3208)