# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CUBIST PHARMACEUTICALS, INC. )
)
            Plaintiff, )
)
     v. )     C.A. No. 09-189-GMS
)
TEVA PARENTERAL MEDICINES, INC., )
TEVA PHARMACEUTICALS USA, INC., )
And TEVA PHARMACEUTICAL )
INDUSTRIES LTD., )
)
           Defendants. )

## ANSWERING CLAIM CONSTRUCTION BRIEF OF THE TPM DEFENDANTS

OF COUNSEL:

Francis C. Lynch
Laurie S. Gill
Charles H. Sanders
Sundar Subramanyam
Kelley E. Walsh
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Tel: (617) 570-1000

Dated: April 30, 2010
964437 /34185

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants*
*Teva Parenteral Medicines, Inc.,*
*Teva Pharmaceuticals USA, Inc., and Teva*
*Industries Ltd.*

# TABLE OF CONTENTS

Page

INTRODUCTION................................................................................................................1

ARGUMENT......................................................................................................................2

I.     Cubist's Proposed Construction of the "Therapeutically Effective Amount" Language in the '967 and '689 Patents as Referring to the Total Amount of Daptomycin that is Administered Over the Course of Treatment Has No Support in the Specification or Prosecution History.................................................................2

     A.     The Specification Uses "Therapeutically Effective Amount" as a Generalization When Specific Dose Amounts Are Not Specified, Not as a Limitation Separate and Apart from the Specified Dose Amounts.......................3

     B.     The References in the Specification to Duration of Administration and Determining Efficacy of Treatment Do Not Support Construction of the "Therapeutically Effective Amount" Language as Meaning Total Amount Administered during Treatment.................................................................................4

     C.     The Cases Cited by Cubist Do Not Support its Proposed Construction of the "Therapeutically Effective Amount" Language. .............................................5

II.     Cubist's Proposed Construction of the "at a Dosage Interval that Minimizes Skeletal Muscle Toxicity" Language in the '967 and '689 Patents Fails to Recognize that the Patent Examiner's Rejections Based on Failure to Include Language Regarding Reducing Skeletal Muscle Toxicity Were Directed at Broad Independent Claims that Did Not Otherwise Limit those Claims to Dose Amounts and Dosage Intervals that Achieved this Result. ................................................................7

III.     Cubist Ignores Both the Admissions in the Specification and the Prosecution History and the Examiner's Rejection of a Claim to LY146032 with Less than 2.5% of the Two Impurity Compounds in Arguing that "In Substantially Pure Form" in Claim 20 of the RE'071 Patent Modifies the Combination as a Whole. ..........12

CONCLUSION ................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agilent Techs., Inc. v. Affymetrix, Inc.,*
567 F.3d 1366 (Fed. Cir. 2009) ..........................................................................7

*Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.,*
359 F.3d 1367 (Fed. Cir. 2004) ..........................................................................6

*Hearing Components, Inc. v. Shure Inc.,*
No. 09-1364, 2010 WL 12356321 (Fed. Cir. Apr. 1, 2010) ...............................11

*Invitrogen Corp. v. Biocrest Mfg, L.P.,*
327 F.3d 1364 (Fed. Cir. 2003) ....................................................................10, 11

*Mangosoft, Inc. v. Oracle Corp.,*
525 F.3d 1327 (Fed. Cir. 2008) ..........................................................................7

*Merck & Co. v. Teva Pharm., USA, Inc.,*
395 F.3d 1364 (Fed. Cir. 2005) ..........................................................................7

*Roche Palo Alto LLC v. Apotex, Inc.,*
531 F.3d 1372 (Fed. Cir. 2003) .........................................................................11

*Symantec Corp. v. Computer Assocs., Inc.,*
522 F.3d 1279 (Fed. Cir. 2008) ..........................................................................9

*Syntex (U.S.A.) LLC v. Apotex, Inc.,*
407 F.3d 1371 (Fed. Cir. 2005) ..........................................................................5

*TDM Am., LLC v. United States,*
85 Fed. Cl. 774 (Fed. Cl. 2009) ..........................................................................6

Defendants Teva Parenteral Medicines, Inc., Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd (collectively "TPM") submit this answering claim construction brief in response to the opening claim construction brief submitted by plaintiff Cubist Pharmaceuticals, Inc. ("Cubist").

**INTRODUCTION**

Cubist's argument that the "therapeutically effective amount" language in the asserted claims of U.S. Patent Nos. 6,468,967 (the "'967 patent") and 6,852,689 (the "'689 patent") means the total dose amount administered over the duration of the treatment is not supported by anything in the specification of these patents. As detailed below, the specification does not even suggest that "therapeutically effective amount" implicitly refers to duration as well as amount. To the contrary, the claims make clear that applicants included express claim limitations regarding duration when that was what was intended. As TPM has demonstrated in its Opening Claim Construction Brief ("TPM's Opening Brief"), the "therapeutically effective amount" language in the asserted claims merely states the intended result of the administration of the dose amounts expressly specified in those claims. (D.I. 36, TPM's Opening Brief at 6-11.) As such, "therapeutically effective amount" should not be construed as a claim limitation.

Cubist's assertion at page 10 of its Opening Claim Construction Brief ("Cubist's Opening Brief") that the patent Examiner required the language "at a dosage interval that minimizes skeletal muscle toxicity" to be added to every claim of both applications during prosecution fails to recognize the difference between the unasserted broad independent claims and the narrower asserted dependent claims. As explained below, the Examiner only required such language in broad independent claims that did not otherwise provide sufficiently limited dose amount and dose interval information to define the claimed invention. In the asserted claims, however, the dose amounts and dose intervals are expressly specified such that the additional language about

"minimizing skeletal muscle toxicity" should be construed as non-limiting language that merely states the intended result of the specific dose amounts and dose intervals claimed.

Cubist's proposed construction of claim 20 of U.S. Patent No. RE39,071 (the "RE'071 patent"), as claiming that the combination of the specified formula 1, formula 2 and formula 3 compounds has to be "in substantially pure form," *i.e.*, contains less than 2.5 percent of a combined total of anhydro-LY 146032 (formula 1) and isomer-LY146032 (formula 2), fails to acknowledge both the definition of "in substantially pure form" in the specification and the clear admission made by the applicants during prosecution that it was the formula 3 compound which had to be in substantially pure form, not the combination as a whole. Moreover, Cubist also ignores the fact that the Examiner rejected applicants' attempts to obtain a claim to substantially pure daptomycin during the reissue prosecution on the grounds that such a claim was an improper recapture of previously surrendered material. Yet Cubist's proposed construction effectively claims substantially pure daptomycin, contrary to the Examiner's clear refusal to issue such a claim.

## ARGUMENT

I.    **Cubist's Proposed Construction of the "Therapeutically Effective Amount" Language in the '967 and '689 Patents as Referring to the Total Amount of Daptomycin that is Administered Over the Course of Treatment Has No Support in the Specification or Prosecution History.**

| Claim Term | Cubist | TPM |
|---|---|---|
| "[A] therapeutically effective amount of daptomycin" | "An amount of daptomycin that is efficacious in reducing or eliminating the gram-positive bacterial infection" | Non-limiting as merely statement of intended result of specific dose limitation |

Cubist argues that the claim language "therapeutically effective amount" should be construed to mean the *total amount* of daptomycin (administered in multiple, successive doses),

2

effective to reduce or eliminate an infection." (D.I. 37 (Cubist's Opening Brief) at 7 (emphasis in original).) In effect, Cubist says that "therapeutically effective amount" means the dose amount given multiplied by the number of times the dose is given during the course of treatment. Thus if a 4 mg/kg dose is given once every 24 hours for 14 days, Cubist is asserting that the "therapeutically effective amount" is 56 mg/kg. None of the citations to the specification relied on by Cubist supports its current argument that the "therapeutically effective amount" language refers to the total amount of daptomycin administered over the course of treatment.

## A. The Specification Uses "Therapeutically Effective Amount" as a Generalization When Specific Dose Amounts Are Not Specified, Not as a Limitation Separate and Apart from the Specified Dose Amounts.

Cubist does not challenge the fact that all asserted claims in the '967 and '689 patents require administration of either a specific dose or a numerically defined limited range of doses of daptomycin at a specified dosage interval. Asserted claims 16, 17, 34, 35 and 42-45 of the '967 patent and claims 51 and 52 of the '689 patent specify a daptomycin dose of either 4 mg/kg or 6 mg/kg to be administered either once every 24 hours or once every 48 hours. '967 patent (J.A. at A15); '689 patent (J.A. at A34). The remaining asserted claims specify a numerically defined dose range from 3 mg/kg to 12 mg/kg. '967 patent, claims 3, 4, 5, 27 and 28 (J.A. at A14-15); '689 patent, claims 48-50 (J.A. at A34). In all the asserted claims, the reference to "therapeutically effective amount" merely states the intended result of the specific dose amount and dose interval limitations.

The portions of the specification quoted at page 8 of Cubist's Opening Brief do not support the argument that "therapeutically effective amount" must be construed as a limitation. Instead, the cited portions of the specification merely show that the applicants sometimes used general language about administering therapeutically effective amounts in lieu of referring to the

3

specific dose amounts. See '967 patent, col. 7, ll. 17-24 (J.A. at A11) ("The methods of the present invention comprise administering daptomycin . . . to a patient in need thereof an amount that is efficacious in reducing or eliminating the gram-positive bacterial infection and that results in reduced skeletal muscle toxicity compared to other methods of administering daptomycin."); *id.* Abstract (J.A. at A2) ("The invention provides methods for administering a therapeutically effective amount of daptomycin while minimizing skeletal muscle toxicity."); *id.* col. 2, ll. 40-43 (J.A. at A8) ("[T]here is a great need to develop methods for administration of effective amounts of daptomycin that will also minimize adverse skeletal muscle effects."). When specific dose amounts are recited in the asserted claims, however, the reference to a "therapeutically effective amount" is simply redundant in light of the specific dose amounts claimed.

**B.    The References in the Specification to Duration of Administration and Determining Efficacy of Treatment Do Not Support Construction of the "Therapeutically Effective Amount" Language as Meaning Total Amount Administered during Treatment.**

Cubist's citations to the portions of the specification that describe a duration of administration of daptomycin from at least two days to as long as three months and that state that daptomycin may be administered "until the bacterial infection is eradicated or reduced" (Cubist's Opening Brief at 9) similarly fail to provide any support for its proposed construction of the "therapeutically effective amount" language. To the contrary, the fact that the specification clearly identifies when it is describing duration of treatment demonstrates that the applicants knew how to specify that attribute of the claimed method of administration. Accordingly, it would be inappropriate to construe the phrase "therapeutically effective amount" as implicitly incorporating a duration of treatment component by multiplying the effective dose by the number of days of treatment.

Furthermore, Cubist included claim limitations defining the specific duration of therapy and specifying that the daptomycin dose be repeatedly administered "until said bacterial infection is treated or eradicated" when it wanted to claim a duration of administration. *See* '967 patent, claims 26, 36-40 of the '967 patent. (J.A. at A15). It would be inappropriate to read a duration component into "therapeutically effective amount" when it is clear that the applicants included express claim limitations regarding duration of treatment when that is what was intended. Moreover, the portion of the specification that identifies criteria for determining when a dosage level and interval is efficacious (*id.* col. 14, ll. 11-21 (J.A. at A14)) merely identifies how to determine when the separate "until said bacterial infection is treated or eradicated" limitation is met. Again Cubist is relying on specification language that relates to claim language that is separate from the "therapeutically effective amount" language. The clear evidence that applicants knew how to claim attributes relating to duration of administration using other claim language demonstrates that it would be inappropriate to read a duration concept into the "therapeutically effective amount" language.

C.    **The Cases Cited by Cubist Do Not Support its Proposed Construction of the "Therapeutically Effective Amount" Language.**

As explained in TPM's Opening Brief at pages 6-8, the Federal Circuit has held that claim language that merely states the intended result of the other specific claim limitations is appropriately construed as non-limiting. As explained above, there is no basis for Cubist's claim that "therapeutically effective amount" should be construed to incorporate a duration component separate from the claimed dose amounts.

The dicta cited at page 7 of Cubist's Opening Brief favoring claim constructions that give meaning to all claim terms does not change the specific holding in *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1378 (Fed. Cir. 2005) that claim language that merely states the

intended result is not limiting. In fact, the holding in *Bancorp Services L.L.C. v. Hartford Life Insurance Co.*, 359 F.3d 1367 (Fed. Cir. 2004), cited by Cubist, supports TPM's construction that the "therapeutically effective amount" language is non-limiting. In *Bancorp*, the patentee argued that the term "surrender value protected investment credits" had the same meaning as another claim term, "stable value protected investment credits." 359 F.3d at 1372. The Federal Circuit stated that "[defendant] is correct that the use of both terms in close proximity in the same claim gives rise to an inference that a different meaning should be assigned to each . . . *[but] . . . [t]hat inference . . . is not conclusive; it is not unknown for different words to be used to express similar concepts*, even though it may be poor drafting practice." *Id.* at 1373 (emphasis added). The Federal Circuit then held that the two terms should be construed to be synonymous. *Id.* at 1374. Here, any initial inference that "therapeutically effective amount" and "dose" have different meanings is rebutted by the fact, explained above, that the specification uses "therapeutically effective amount" to refer generally to the dose when it does not recite specific dose amounts.

In *TDM America, LLC v. United States*, 85 Fed. Cl. 774 (Fed. Cl. 2009), also cited by Cubist, the Court of Federal Claims found that the patent holder had explicitly disavowed a construction of the claim term "containment receptacle" that was synonymous with "mixing vessel" and thus did not rely on the dicta recited about different claim terms having different meanings. *Id* at 801.

Cubist cites additional dicta at page 8 of its Opening Brief that the Federal Circuit disfavors constructions that "ascribe[] no meaning to the term . . . not already implicit in the rest of the claim." However, none of the cases cited by Cubist involve the situation presented here where claim language merely states the intended result of other more specific claim language.

6

*See Mangosoft, Inc. v. Oracle Corp.*, 525 F.3d 1327, 1329-34 (Fed. Cir. 2008) (no argument was raised that the disputed term "local" merely described the intended results of the other, express limitations of the claim); *see also Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1377-78 (Fed. Cir. 2009) (no argument was raised that the disputed term "closed" described the intended result of the other claim limitations); *Merck & Co. v. Teva Pharm., USA, Inc.*, 395 F.3d 1364, 1369-72 (Fed. Cir. 2005) (construing "about" to mean "approximately," instead of district court's construction as "exactly").

II.    **Cubist's Proposed Construction of the "at a Dosage Interval that Minimizes Skeletal Muscle Toxicity" Language in the '967 and '689 Patents Fails to Recognize that the Patent Examiner's Rejections Based on Failure to Include Language Regarding Reducing Skeletal Muscle Toxicity Were Directed at Broad Independent Claims that Did Not Otherwise Limit those Claims to Dose Amounts and Dosage Intervals that Achieved this Result.**

| Claim Term | Cubist | TPM |
|---|---|---|
| "[A]t a dosage interval that minimizes skeletal muscle toxicity" | "at a dosage interval that reduces skeletal muscle toxicity in comparison to dosing more than once every 24 hours" | Non-limiting as merely statement of intended result of specific dosage interval claimed |

Cubist purports to rely on the prosecution history to support its argument that the "at a dosage level that minimizes skeletal muscle toxicity" language in the asserted claims of the '967 and '689 patents should be construed as a claim limitation even though the dose intervals are specifically claimed in all asserted claims as either once every 24 hours or once every 48 hours. As explained below, the Examiner's rejections on the grounds that claims "fail[ed] to set forth the subject matter which applicant(s) regard as their invention," were directed either to claims that specified a range of doses without any dosing interval that were later cancelled or to unasserted independent claims with a very broad range of dose amounts from 3 to 75 mg/kg.

7

These rejections reflect the Examiner's conclusion that such broad claims went beyond the subject matter of the invention, which was allegedly to identify a method of administering daptomycin at specified dose amounts and dose intervals that minimized skeletal muscle toxicity. The asserted dependent claims at issue in this case, however, specify either a single dose amount and dosage interval or a narrowly defined range. With respect to the narrow asserted claims, the language about "minimizing skeletal muscle toxicity" incorporated from the independent claims is nothing more than a statement of intended result of the specific dose amounts and dosage intervals set forth in these narrow claims.

The first rejection on the ground that claims "fail[ed] to set forth the subject matter which applicant(s) regard as their invention" was directed to application claims 32 and 33, which did not specify a dosage interval. *See* '967 File History, April 11, 2000 Office Action at 2-3 (J.A. at A102-03); '967 File History, Patent Application at 30 (J.A. at A91). In rejecting application claims 32 and 33, the Examiner recognized that because those claims did not specify any dosing interval, they did not adequately define the claimed method of administration. Application claims 32 and 33 were both cancelled and thus are irrelevant to the asserted claims. *Compare* '967 File History, Sept. 11, 2000 Amendment and Response at 4 (J.A. at A112) *and* '967 File History '967 File History, June 4, 2001 Amendment and Response at 5 (J.A. at A154) *with* '967 patent (J.A. at A14-15).

A second rejection on this ground was directed at application claim 16. *See* '967 File History, December 4, 2000 Office Action at 2 (J.A. at A142); '967 File History, Patent Application at 28 (J.A. at A89). With respect to application claim 16 (which became unasserted claim 12 in the issued '967 patent), the Examiner was apparently concerned that the wide range of doses claimed (from 3 mg/kg to 75 mg/kg) did not adequately define the invention because of

the likelihood that the high dose amounts claimed would not in fact eliminate skeletal muscle toxicity. The Examiner's concern is confirmed by the fact that the data in the specification reporting on skeletal muscle toxicity shows that there was significant skeletal muscle toxicity when a 75 mg dose was administered once every 24 hours. '967 patent, cols. 9 and 10, tables 1 and 2 (J.A. at A12). Thus, in application claim 16 with the broad dose range of 3 mg/kg to 75 mg/kg the additional language "regarding minimizing skeletal muscle toxicity" was perceived by the Examiner to have been necessary to define the claimed invention.

In addition, applicants voluntarily amended the broadest independent application claim 6, which claimed administration of doses from 3 to 75 mg/kg in dosage intervals from once every 24 hours to once weekly, to include the language "at a dosage interval that does not result in skeletal muscle toxicity" in the preamble of that claim. '967 File History, September 11, 2000 Amendment and Response to Office Action at 2 (J.A. at A110). Preamble language is generally not considered to be a limitation of the claim. *See Symantec Corp. v. Computer Assocs., Inc.*, 522 F.3d 1279, 1288 (Fed. Cir. 2008). This voluntary addition of language of intended result in the preamble confirms that the applicants understood that the remaining language of application claim 6, which recites both dosage amounts and dosage intervals, adequately defined their invention.

The cryptic notation in the May 1, 2001 Interview Summary that "Examiner suggested amending claims to state minimization of toxicity in body of claims" (J.A. at A148), which was followed by the amendment of application claim 6 to move language regarding reduction of skeletal muscle toxicity from the preamble to the body of that claim (June 4, 2001 Amendment and Response to Office Action (J.A. at A161)), is again consistent with the conclusion that the Examiner was concerned that the broad range of dose amounts and dosing intervals set forth in

application claim 6 did not adequately define an invention that was not obvious or anticipated by the prior art. Application claim 6 became independent claim 1, which has not been asserted in this case.

The overbreadth problem recognized by the Examiner in the independent claims is not present in the narrow dependent claims being asserted here. In the asserted claims, both the dose amounts and dose intervals are either specified as a narrowly defined range or expressly defined as a single numerical value. The broadest range of dose amounts in the asserted claims is 3 to 12 mg/kg (claims 3, 4, 27 and 28). '967 patent (J.A. at A14-15). The broadest range of dose intervals claimed in the asserted patents is only "once every 24 hours to once every 48 hours" (claims 3-5, 27, 28, 34, 35, 44 and 45). *Id.* Those dose amounts and dose intervals are required steps for the claimed method of administering daptomycin from which the result (minimization of skeletal toxicity) necessarily flows. Although the Examiner may have been concerned that the broader independent claims did not adequately define the invention without specifically claiming minimization of skeletal muscle toxicity, no such concern exists with the narrowly defined asserted claims at issue here. In the narrow asserted claims, the "minimizing skeletal muscle toxicity" language merely recites the result achieved by administering the specific doses at the specific intervals in the claimed method of administering daptomycin and does not further limit the method of administration itself. Therefore, the "minimizing skeletal muscle toxicity" language should not be considered a limitation in the asserted claims.

The cases regarding whether preamble language is a limitation cited on page 13 of the Cubist Opening Brief do not even address the issue presented here. In *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1370 (Fed. Cir. 2003) the Federal Circuit expressly found that the preamble language "improved competence" was not merely a statement of intended

10

advantage, but a separate limitation of the claim. Again, in *Hearing Components, Inc. v. Shure Inc.*, No. 09-1364, 2010 WL 12356321, at *6 (Fed. Cir. Apr. 1, 2010), the court specifically found that the phrase "readily installed" in the preamble was not "duplicative of other language in the claim." With respect to the asserted claims presented here, however, as demonstrated above, the "minimizing skeletal muscle toxicity" language does not add anything to the claim in light of the specific dose and dose intervals specified other than a statement of intended result.

Furthermore, neither the *Invitrogen* or *Hearing Components* cases establishes a *per se* rule that distinguishing the claimed invention from the prior art requires that any language in the claim regarding such a distinguishing characteristic be construed as a limitation. As demonstrated in TPM's Opening Brief at page 10, the Federal Circuit rejected an argument in an analogous situation that the prosecution history required that claim language be construed as a limitation in *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1378 (Fed. Cir. 2003). There, despite the Court's express recognition that the stabilizing effect of producing a clear solution was an unexpected result which overcame an obviousness rejection, the Federal Circuit again confirmed that the "stabilizing amount" language was not a limitation. *Id.* As in the *Roche* case, the fact that the result of minimizing skeletal muscle toxicity was considered by the Examiner here to be relevant to patentability does not mean that the result achieved must be construed as a claim limitation. A non-limiting construction is particularly appropriate here because the specific limitations of dose amount and dosing interval in the asserted claims fully define the method of administration claimed.

**III.  Cubist Ignores Both the Admissions in the Specification and the Prosecution History and the Examiner's Rejection of a Claim to LY146032 with Less than 2.5% of the Two Impurity Compounds in Arguing that "In Substantially Pure Form" in Claim 20 of the RE'071 Patent Modifies the Combination as a Whole.**

| Claim Term | Cubist | TPM |
|---|---|---|
| "[I]n substantially pure form" | "wherein the formula 3 compound is LY146032 and the combination contains less than 2.5% of a combined total of the formula 1 compound (*i.e.* anhydro-LY146032) and the formula 2 compound (*i.e.* isomer-LY146032)" | "wherein the formula 3 compound is LY146032 which contains less than 2.5 percent of a combined total of anhydro-LY146032 and isomer-LY146032" |

The parties agree that "in substantially pure form" means that there must be less than 2.5 percent of the combined total of anhydro-LY146032 (figure 1) and isomer-LY146032 (figure 2). The question is *what* must be "in substantially pure form." As explained in TPM's Opening Brief at pages 11 to 17, Cubist's proposed construction that it is the "combination" composition of claim 20 as a whole that must be substantially pure is contrary to the definition of "in substantially pure form" in the specification and the applicants' admission during prosecution, as well as an improper attempt to recapture a claim to daptomycin in substantially pure form that applicants had cancelled during the original prosecution. TPM's proposed construction, on the other hand, appropriately reflects the express admission by applicants during prosecution that it was the formula 3 compound in claim 20, not any combination, that was "in substantially pure form."

Cubist's effort at page 17 of its Opening Brief to present a "simplified version of Claim 20" is inaccurately oversimplified. Cubist's use of an ellipsis for all the claim language after the initial description of the combination and before the final words "in substantially pure form" hides the fact that the definitions of the 3 formulas are separated by semicolons and that the "in

12

substantially pure form" language modifies only the defined formula 3 compound, not the combination. An accurate simplification would read as follows:

> An antibiotic composition useful for the treatment of bacterial infections comprising a combination of a compound of formula 1, a compound of formula 2 and a compound of formula 3, wherein the formula 1 compound is anhydro LY146032; the formula 2 compound is isomer LY146032; and the formula 3 compound is LY146032, in substantially pure form.

As explained in TPM's Opening Brief at page 14, footnote 3, the use of semicolons to separate the descriptions of the three compounds clarifies that "in substantially pure form" modifies only the final element, formula 3, not the entire combination of three compounds.

In addition, the argument at page 17 of Cubist's Opening Brief that Claim 20 should be construed to have the same meaning as claims 18, 26 and 30 should be rejected because different language was used in these claims. Claims 18, 26 and 30 contain the following language after the identification of the formula 1, 2 and 3 compounds: "; and wherein the total amount of the compound of formula 1 and the compound of formula 2, or salts thereof, in the combination is less than 6 weight percent." RE'071 patent (J.A. at A44-49). If applicants had intended that claim 20 would similarly provide that the purity limitation referred to the combination of the three compounds, it would have been expected that they would have used similar language linking "in substantially pure form" to the "combination." Because claim 20 does not use such language, it should not be construed in the same manner as claim 18.

The portions of the prosecution history on which Cubist relies do not support its proposed construction of "in substantially pure form" in claim 20 as modifying the combination of the 3 compounds. Page 17 of the December 21, 2000 Amendment and Response to Office Action (J.A. at A281) cited at page 18 of Cubist's Opening Brief does not even address claim 20, but instead deals with separate claims 18 and 19. The July 3, 2003 Amendment and Response cited

13

by Cubist provides no insight into the issue presented here—whether "in substantially pure form" modifies the formula 3 compound or the combination of the three compounds. The cited portion of the prosecution history merely refers to the specification definition of "in substantially pure form" as meaning "containing less than 2.5 weight percent of a combined total of anhydro- and isomer-compounds (or salts)." RE'071 File History, July 3, 2003 Amendment and Response at 15 (J.A. at A316). It says nothing about whether it is the formula 3 compound or the combination of three compounds that must be substantially pure.

Furthermore, Cubist ignores the applicants' admission during prosecution regarding the language of claim 20 as issued. Applicants expressly stated that "Claim 20 further specifies that the formula 3 compound is in substantially pure form." RE'071 File History, Dec. 21, 2000 Amendment and Response at 12 (J.A. at A276). This is an acknowledgement that "in substantially pure form" limits the formula 3 compound, as TPM asserts, not the combination of the three different compounds claimed, as Cubist now asserts.

Cubist cites no support for its final argument at page 18 of its Opening Brief that formula 3 as defined in Claim 20 must be a pure compound that does not contain any impurities. Indeed, this argument is belied by the disclosures in the patent that LY146032 (referred to in the patent as formula 3) contained the two impurities defined as formula 1 and formula 2. RE'071 patent, col. 7: ll. 62-67 to col. 8: ll. 1-16 (J.A. at A40). Accordingly, it makes sense that applicants would specify that the formula 3 compound, which was known to contain these impurities, has to be in "substantially pure form."

Cubist also fails to acknowledge the portion of the RE'071 prosecution history in which applicants originally tried to obtain a claim covering the formula 3 compound "in substantially pure form" when they submitted the reissue application (RE'071 File History, Patent Application

14

at claim 20 (J.A. at A245-46)), but that claim was rejected as improper recapture of claim 24 that had been cancelled during the prosecution of U.S. Patent 5,912,226 (the "'226 patent"). RE'071 File History, Aug. 22, 2000 Office Action at 2-3 (J.A. at A255-56). Amended claim 24 covering daptomycin "in substantially pure form" had been cancelled by the applicants during the '226 prosecution after it was rejected on the grounds of both obviousness and obviousness-type double patenting rejections over one of Lilly's own prior patents. *See* '226 File History, Sept. 14, 1990 Office Action at 3-6 (J.A. at A378-81); '226 File History, Aug. 14, 1991 Office Action at 3-6 (J.A. at A385-88); '226 File History, Nov. 5, 1991 Amendment at 1-2 (J.A. at A391-92). To overcome the improper recapture rejection in the RE'071 prosecution, applicants changed the language of claim 20 to require a combination of the formula 1 and formula 2 compounds, in addition to the formula 3 compound "in substantially pure form." RE'071 File History, Dec. 21, 2000 Amendment & Response at 4-5 (J.A. at A268-69). Cubist's proposed construction ignores the added language that the composition contain the formula 1 and 2 compounds in addition to the formula 3 compound in substantially pure form. Instead, Cubist seeks a construction that reads the combination of three compounds language out of claim 20 and improperly construes claim 20 so that it covers daptomycin in substantially pure form, the improper recapture that the Examiner expressly rejected.

## CONCLUSION

For the reasons set forth above, the Court should construe the claim language "a therapeutically effective amount of daptomycin" and "at a dosage interval that minimizes skeletal muscle toxicity" in the asserted claims of the '967 and '689 patents as non-limiting because they merely state the intended result of the specific dose amount and dosage intervals claimed in the asserted claims. The "in substantially pure form" limitation of claim 20 of the RE'071 patent should be construed to mean "wherein the formula 3 compound is LY146032

15

which contains less than 2.5 percent of a combined total of anhydro-LY146032 and isomer-

LY146032."

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Francis C. Lynch
Laurie S. Gill
Charles H. Sanders
Sundar Subramanyam
Kelley E. Walsh
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Tel: (617) 570-1000

Dated: April 30, 2010
964437 /34185

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19899
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendants*
*Teva Parenteral Medicines, Inc.,*
*Teva Pharmaceuticals USA, Inc., and Teva*
*Industries Ltd.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on April 30, 2010, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on April 30, 2010, the attached document was Electronically Mailed

to the following person(s):

Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
mnoreika@mnat.com

William F. Lee
Lisa J. Pirozzolo
Wilmer Cutler Pickering Hale
and Dorr LLP
60 State Street
Boston, MA 02109
william.lee@wilmerhale.com
lisa.pirozzolo@wilmerhale.com

Kate Hutchins
Wilmer Cutler Pickering Hale
and Dorr LLP
399 Park Avenue
New York, NY 10022
kate.hutchins@wilmerhale.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

911693 / 34185